Les MAZURKIEWICZ, and Anna
Mazurkiewicz, Plaintiffs,

v.

NEW YORK CITY TRANSIT AUTHORI-
TY, P.O. Victor Di Donato, P.O. Susan
Werman, P.O. Barbara Van Cook, P.O.
James McFarland and Sgt. Arthur
Smith, Police Officers John Does, indi-
vidually, and in their official capacities,
Defendants.

No. 91 Civ. 6764 (CBM).

United States District Court,
S.D. New York.

Jan. 19, 1993.

See also 806 F.Supp. 1093.

Joseph W. Ryan Jr., M. Elisabeth Bergeron, Joseph W. Ryan, J.R. P.C., Uniondale, NY, for plaintiffs Les Mazurkiewicz and Anna Mazurkiewicz.

Bruce Bendix, Rivkin, Radler & Kremer, Uniondale, NY, for defendants New York City Transit Authority, P.O. Susan Werman, P.O. Barbara Van Cook, James McFarland and Arthur Smith.

William A. Gogel, Barry Agulnick, Agulnick & Gogel, New York City, for defendant Victor Di Donato.

## OPINION

MOTLEY, District Judge.

## I. BACKGROUND: THE INCIDENT IN QUESTION

This lawsuit arises out of an incident at the Columbus Circle Subway Station on September 27, 1990. The following facts are not in conflict:

Plaintiffs are Les Mazurkiewicz, a waiter at the Russian Tea Room and the alleged victim of defendants' acts and his wife Anna Mazurkiewicz. Defendants are officers of the New York City Transit Police and the New York City Transit Authority ("NYCTA") a public benefit corporation responsible for, among other things, policing the New York City subway transit system through the Transit Police Department.

On September 27, 1990 in the late afternoon, after leaving his place of employment, plaintiff stepped over a turnstile while entering the subway system without paying his fare via token. This was done in plain view of both Officers Susan Werman and Barbara Van Cook, both defendants in this action. Plaintiff attempted, at some point shortly after going over the turnstile, to hand a token to Officer Susan Werman who refused to accept it. Officer Werman refused to accept the token and told plaintiff that he was under arrest for attempting to steal a subway ride ("theft of services"). Officer Werman rejected plaintiff's explanation that the turnstile was broken and that he never intended to steal a subway ride. She then proceeded to attempt to handcuff him, succeeding in cuffing one wrist. Police Officer Barbara Van Cook came to Officer Werman's assistance and tried to cuff plaintiff's other hand. Plaintiff contends that he showed a token in his hand and indicated to Officer Werman that he was going over the turnstile because it was inoperable.

The rest of the relevant facts are sharply disputed. Plaintiff alleges in his pleadings that defendants Officers Van Cook, Di Donato, McFarland and Smith then proceeded to beat and batter plaintiff without provocation. However, in plaintiff's own deposition, plaintiff stated when asked about each officer's actions, individually, that certain of the defendants' contacts with him were de minimis.

Not surprisingly, defendants' version differs in substantial aspects. Defendants contend that Mr. Mazurkiewicz became abusive when told that he was under arrest and began cursing the officers loudly and attempted to stir up the large and noisy crowd that filled the station. Defendants contend that plaintiff viciously lashed out at arresting officer Werman, bruising her face badly, and that the other defendant officers were also bruised and injured in attempting to subdue plaintiff who refused to be handcuffed. Defendants have submitted voluminous medical records to bolster these claims.

Plaintiff was taken to a police station and criminally charged with nine misdemeanor counts of Assault, Resisting Arrest, Harassment, and Theft of Services. At trial in April of 1991 before Judge Barbara Newman and a jury, plaintiff was acquitted on all counts.

Thereafter plaintiff filed this lawsuit alleging seven counts. Count One, a false arrest and imprisonment charge is alleged under § 1983 and is against the New York City Transit Authority. Count Two is based on alleged Assault and Battery by the individual officers. Count Three is alleged to be False Arrest and False Imprisonment against the individual officers. Count Four is alleged Malicious Prosecution against the officers. Count Five is based in negligence and is a state law claim. Count Six alleges Excessive and

Unnecessary Force by the officers. Count Seven is based on alleged lost services by plaintiff's wife.

Defendants have moved for summary judgment on almost all claims. This court has reviewed the documents submitted in support of and in opposition to defendants' motion and heard oral argument in open court on January 8 and 14 of 1993.

Summary judgment is appropriate when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986). Movant need not negate the opponents claim; what movant must do is show that nonmoving party's claims are "factually unsupported." *Celotex Corp.,* 477 U.S. at 323, 106 S.Ct. at 2553, 91 L.Ed.2d at 275. There must be no genuine issue as to any material fact.

For the nonmoving party to prevail it is insufficient for him to merely allege material issues in dispute. Some evidence must be presented in opposition. A summary judgment "opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986). It is insufficient to state in opposition to summary judgment, as plaintiff repeatedly does in his pleadings, that material facts will be adduced and proved at trial. If enough evidence is not presented, there will not be a trial; it is not enough merely to promise that at trial some evidence will turn up. (See, e.g. Plaintiffs' Memorandum in Opposition to Defendants' Motion for Summary Judgment, at 2–3, 11, 15, 17, 20).

According to the language of the Rule, When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial."

Fed.R.Civ.Pro. 56(e). The allegations in the pleadings, themselves, do not count as evidence that the actions alleged actually took place as contended therein.

## II. COUNT ONE: THE LIABILITY OF DEFENDANT TRANSIT AUTHORITY

The first count of plaintiffs' complaint, grounded in 42 U.S.C. § 1983, alleges that the NYCTA "deprived the plaintiff LES MAZURKIEWICZ of rights secured to him by the Constitution of the United States, including, but not limited to, his Fourth amendment right to be free from unlawful seizure of his person and illegal detention, and his Fifth and Fourteenth amendment rights to due process of law, and said defendants are liable to the plaintiff, LES MAZURKIEWICZ, under the provisions of 28 U.S.C. Sections 1983 and 1988." (sic) (Complaint at ¶ 37). It is assumed that plaintiff means Sections 1983 and 1988 of 42 U.S.C. Defendants' motion for summary judgment on this count is unopposed. This count is, therefore, dismissed.

## III. COUNTS TWO THROUGH SEVEN: THE LIABILITY OF THE INDIVIDUAL TRANSIT POLICE OFFICERS AND THEIR DEFENSE OF QUALIFIED IMMUNITY

Counts Two through Seven of plaintiffs' complaint lie against the individual Transit Police Officer defendants: officers Susan Werman (Werman), Barbara Van Cook (Van Cook), Victor Di Donato (Di Donato), James McFarland (McFarland) and Arthur Smith (Smith). Thus, in order to escape summary judgment, plaintiffs must not only show that there are genuine material issues of fact in dispute as to the conduct of defendants but must also show that the officers lost the qualified immunity that shields certain government officers from the legal consequences of their actions.

One of the more recent cases, *Anderson v. Creighton,* 483 U.S. 635, 107

S.Ct. 3034, 97 L.Ed.2d 523 (1987), to address the issue of qualified immunity for law enforcement officers makes it clear that the law clothes "government officials performing discretionary functions with a qualified immunity, shielding them from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson*, 483 U.S. at 638, 107 S.Ct. at 3038, 97 L.Ed.2d at 530; *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). This standard is broad and protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271, 278 (1986). Qualified immunity protects officers from liability in suits against officials in their personal capacity. It is not available in a suit against officials acting in their official capacity. *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114, 122 (1985); *Cartier v. Lussier*, 955 F.2d 841, 844 (2d Cir.1992).[1]

■ Thus, the standard is one of reasonableness. "The contours of the right [violated by the officers' conduct] must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640, 107 S.Ct. at 3037, 97 L.Ed.2d at 531.

The standard is objective, not subjective. "A subjective inquiry into an official's personal belief is rejected in favor of an objective analysis of what a reasonable officer in defendant's position would believe." *Cartier v. Lussier*, 955 F.2d 841, 843 (2d Cir. 1992).

The standard is intended to "encourage[ ] the use of summary judgment when qualified immunity is raised as a defense. The objective reasonableness test was designed to facilitate this summary device as a means quickly to extricate government officials from defending insubstantial suits." *Cartier*, 955 F.2d at 844.

*The Various Counts*

A. Assault and Battery and Excessive Force (Counts 2 and 6)

■ The applicable standard was delineated in *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989), which held that claims of excessive force against police officers arising under 42 U.S.C. § 1983 are to be analyzed under the Fourth Amendment's "objective reasonableness" standard. This reasonableness standard entails a fact-intensive inquiry, and "its proper application requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396, 109 S.Ct. at 1871–72, 104 L.Ed.2d at 455. This is an objective standard and the officers' intentions are irrelevant. *Graham*, 490 U.S. at 397, 109 S.Ct. at 1872, 104 L.Ed.2d at 456. There is no good faith defense. *Finnegan v. Fountain*, 915 F.2d 817, 822 (2d Cir.1990).

"The right of an individual not to be subjected to excessive force has long been

---

**1.** A suit against officials acting in their official capacity is in reality merely another way of denominating a suit against the official entity employing those officials. A "government entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus in an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." *Kentucky v. Graham*, 473 U.S. at 166, 105 S.Ct. at 3105, 87 L.Ed.2d at 122 (citations omitted). However, as noted above, plaintiffs have elected not to oppose defendants' summary judgment on this point and have limited their suit to one against the officers in their personal capacity. In such a suits "a victory in a personal-capacity action is an action against the individual defendant" and the award of damages comes from them, not from the employing entity. Id., 473 U.S. at 167, 105 S.Ct. at 3106, 87 L.Ed.2d at 123. In addition, in a personal capacity action legal fees under § 1988 are not recoverable. Id., 473 U.S. at 168–69, 105 S.Ct. at 3106–07, 87 L.Ed.2d at 124–25.

clearly established." *Calamia v. New York*, 879 F.2d 1025, 1036 (2d Cir.1989). Therefore, it appears that there is not qualified immunity as long as there is a factual question as to the existence of excessive force. As noted, the standard to be applied is an objective, not a subjective, one and the officers' state of mind is irrelevant. *Id.; Miller v. Lovett*, 879 F.2d 1066, 1069 (2d Cir.1989).

The question of excessive force is one for the jury in a civil rights action such as this one. See *Calamia*, 879 F.2d at 1035. Plaintiff's assertions, the factual dispute over the amounts of force used, and the injuries suffered by and inflicted by the parties, bar summary judgment. In a cause of action for excessive force, "[r]esolution of credibility conflicts and the choice between these conflicting versions are matters for the jury and [are] properly not decided by the district court on summary judgment." *Robison v. Via*, 821 F.2d 913, 924 (2d Cir.1987).

It is proper to leave the question of qualified immunity on this count of excessive force to the jury. "Whether the officer reasonably believed that their use of force was not excessive [is] properly a jury issue." *Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir.1991) (holding that since fact-finding is integral to determine whether or not officer's were reasonable to believe that their use of force was not unconstitutionally excessive, the question of qualified immunity on issue of excessive force in a § 1983 action is properly for the jury, not the court).

However, by plaintiff's own allegations the charge of excessive force does not properly lie against all defendants. According to the facts presented in both parties pleadings and discussed in open court there is no ground for charging defendant James McFarland with excessive force and assault and battery. Thus, these two counts are dropped as to him but retained as to the other officer defendants.

### B. False Arrest and False Imprisonment (Count 3)

"In the context of an allegedly unconstitutional arrest, the objective reasonableness standard bars the defense of qualified immunity" only where probable cause is so lacking that official belief in its existence is unreasonable. *Cartier*, 955 F.2d at 843.

As recently noted in *Calamia v. New York*, 879 F.2d 1025, 1032 (2d Cir. 1989) "probable cause to arrest exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested."

This question is one of law that need not be submitted to a jury. *Calamia*, 879 F.2d at 1033. It can be decided by analyzing the undisputed facts available to the arresting officer. "For the purpose of determining the lawfulness of an arrest, probable cause encompasses only that information available to the arresting official prior to and including the point of seizure." *Warren v. Dwyer*, 906 F.2d 70, 73 (2d Cir.1990) (citing *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)).

Here, taking plaintiff's version of the event in question as accurate, the court concludes that there was probable cause to arrest plaintiff for theft of services. Plaintiff admits that he stepped over the turnstile without inserting a token. Plaintiff contends that his subsequent offer of a token to officer Werman should have been sufficient to avoid arrest, and that defendants arrest of him was an unreasonable way of dealing with his failure to insert a token before entering the subway. While there might have been more efficient avenues open to the officers to deal with the problem of widespread fare evasion, it is clear from the available evidence that plaintiff has presented no evidence that probable cause was lacking when he was arrested by officers Werman and Van Cook. He committed a violation of the laws governing transport on the subway system. Even assuming plaintiff's assertion that most of the turnstiles were inoperable and that his attempt to pay Officer Werman the fare

directly was a reasonable alternative, that does not negate the fact that he admittedly broke the law.

The false arrest claim is based on the arrest for this theft of services. According to plaintiff's own admission and the language of the relevant criminal statute[2], plaintiff's activities provided a reasonable basis for his arrest by officers Werman and Van Cook. It was objectively reasonable for those defendants to believe that their actions in arresting plaintiff were consonant with plaintiff's constitutional rights not to be arrested without a reasonable basis existing for the arrest. Indeed, even absent defendants' qualified immunity defense, the court would find that plaintiff has not presented the evidence necessary to escape summary judgment on this count. Plaintiff has presented nothing to indicate that his arrest was "false" in any legally relevant sense.

Plaintiff's arrest was based on this theft of services. It was not based on his alleged assault on the arresting officers. The criminal charges of harassment, assault and resisting arrest were filed after plaintiff was arrested for theft of services and brought to the District One Police Station. Plaintiff's malicious prosecution claim derives not from the assault and resisting arrest counts of his criminal indictment but from the fact that when he was arraigned he was charged not only with fare evasion but also with assault on the officers and resisting arrest. His § 1983 claim for false arrest derives solely from the fare evasion charge. This count is hereby dismissed for the reasons discussed above.

■ The count for false imprisonment under New York State law is also dismissed. This tort is synonymous legally with that of false arrest under § 1983.

The dismissal of one count mandates the dismissal of the second. *Posr v. Doherty,* 944 F.2d 91, 96–97 (2d Cir.1991).

### C. Malicious Prosecution (Count 4)

In *Magnotti v. Kuntz,* 918 F.2d 364 (2d Cir.1990), plaintiff claimed that police officers charged him with making a false statement in retaliation for his filing of excessive force charges against the officers who arrested him in regard to a robbery investigation. While § 1983 will clearly support such a cause of action, plaintiff carries a heavy burden of proof at trial. *Magnotti,* 918 F.2d at 368. Of course, to oppose a motion for summary judgment on this count carries a lighter burden, namely that of demonstrating the existence of a disputed question of material fact as to the elements of a malicious prosecution claim.

■ In order to prove a § 1983 claim of malicious prosecution[3] the plaintiff must demonstrate that "(1) the defendant either commenced or continued a criminal proceeding against him; (2) that the proceeding terminated in his favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted with actual malice." *Posr,* 944 F.2d at 100 (collecting cases).

■ Plaintiff has failed to carry the burden of the nonmoving party in a summary judgment motion. Clearly probable cause existed to arrest plaintiff for theft of services. Therefore, prosecution under that charge would not be malicious under the law. What plaintiff must do to survive defendants' summary judgment motion is to show that the charges of harassment, assault on the officers, and resisting arrest filed by defendants violated plaintiff's clearly established constitutional rights of which a reasonable person would have

---

**2.** N.Y.Penal Law § 165.15 provides that:
 A person is guilty of theft of services when:

 . . . . .

 3. With intent to obtain railroad, subway, bus, air, taxi, or any other public transportation service without payment of a lawful charge therefor, or to avoid payment of a lawful charge for such transportation service which has been rendered to him, he obtains

or attempts to obtain such service or avoids or attempts to avoid payment therefor by force, intimidation, stealth, deception or mechanical tampering, or by unjustifiable failure or refusal to pay.

**3.** A New York state tort law claim on this count is legally identical. See *Posr,* 944 F.2d at 100; *Janetka v. Dabe,* 892 F.2d 187, 189 (2d Cir.1989).

known. Defendants must be objectively unreasonable in believing their acts do not violate plaintiffs clearly established constitutional rights for plaintiff's Count Four to escape summary judgment by the defense of qualified immunity. As to that aspect of the criminal proceeding directed toward plaintiff's theft of services, there was probable cause. The real issue in examining the malicious prosecution claim lies with the other criminal charges.

 In regard to the charges of harassment, assault on the officers, and resisting arrest, it appears clear from the record that the evidence mustered by plaintiff is insufficient to survive defendants' motion for summary judgment on the malicious prosecution count.

There was a fight between plaintiff and the officer defendants. Defendants, as noted, have presented in support of their motion for summary judgment voluminous medical records of the officer defendants. Since there was an altercation between the parties, the officers could not have been acting maliciously in charging plaintiff with assault, given the police officers' defense of qualified immunity. From the facts presented in the pleadings and produced at the hearings on defendants' motion, this court finds that plaintiff has not presented evidence that the criminal charges lodged against plaintiff were done in such a manner that it was objectively unreasonable for someone to believe that so charging would violate plaintiff's clearly demarcated constitutional rights.

Plaintiff presented no evidence that the criminal proceeding was instituted with actual malice. Again, plaintiff appears to confuse his duty to present evidence in opposition to a motion for summary judgment with the requirements for opposing a motion made under 12(b)(6) of the Federal Rules of Civil Procedure. Under the latter, one must merely allege facts sufficient to sustain a legal cause of action; however, to oppose a motion for summary judgment one must actually present some evidence, either affidavits, documentary evidence, or prior testimony, that indicate that an issue of material fact remains. Mere statements by counsel do not constitute evidence in opposition to a summary judgment motion in a § 1983 action against police officers. *See Zanghi v. Old Brookville,* 752 F.2d 42, 47 (2d Cir.1985).

Plaintiff seems to believe that his acquittal of the criminal charges necessitates a finding in his favor on this issue. (See Plaintiffs' Trial Memorandum at 10–13). The applicable burdens and standards of proof are quite different. Plaintiff's acquittal merely means that the State failed to prove his guilt beyond a reasonable doubt. The mere fact that the jury felt that a reasonable doubt existed as to the State's case does not necessitate a victory on the issues in this action. Plaintiff must prove his case by a fair preponderance of the evidence or, in opposition to a summary judgment issue, at least show the existence of a material fact at issue. He cannot rely on the fact that the criminal charges were not proven beyond a reasonable doubt.

Also, in respect to officer Smith, he cannot be charged with malicious prosecution since he did not commence the prosecution. He simply testified as a rebuttal witness at the plaintiff's criminal trial.

Thus the count of malicious prosecution is dismissed as to all defendants.

### D. Count Five: RECKLESS NEGLIGENT CONDUCT

Count five of plaintiff's complaint alleges that defendants engaged "in careless, reckless, wantonless and negligent conduct causing injury to the plaintiff (sic)." It is assumed that plaintiff means "wanton" conduct. Plaintiff has provided absolutely no legal support for his claim that such a cause of action exists under state or federal law as to police conduct. Indeed, plaintiff seems to recognize that no such cause of action exists for it is not even discussed in plaintiffs' opposing papers. The court, therefore, assumes that it has been abandoned as a claim.

 Plaintiff cannot argue that defendants engaged in intentional conduct that forms the basis of an assault and § 1983 excessive force claim and also argue that

defendants were negligent towards plaintiff. Negligence on the part of state officials will not support a § 1983 claim. *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). It appears that plaintiff is attempting to include a "lesser included offense" claim in his action. While such a tactic may be appropriate were this a criminal action and plaintiff the defendant, it has no place in a civil action such as the instant lawsuit.

There is no cause of action for negligence on the part of a police officer. A police officer's use of force is privileged to the extent it appears reasonable necessary to effect an arrest or prevent an escape. N.Y.Penal Law § 35.30. It is not negligence to use force in effecting an arrest. If the force used is unreasonable, then one has a claim for excessive force under § 1983. One's rights accrue only when the force used is unconstitutionally excessive, not when it is negligent. The plaintiff must allege an intentional deprivation of rights under *Parratt*.

Thus summary judgment as to all defendants is granted as to this count.

## IV. CONCLUSION

The first count of plaintiffs' complaint grounded in 42 U.S.C. § 1983 is alleged only against defendant Transit Authority. Defendants' motion for summary judgment on this count is unopposed. Summary judgment on this count is granted.

Count Two alleges a cause of action against all the officers for assault and battery on plaintiff. Count Six alleges a use of excessive force under § 1983 against the officers. These causes of action are legally identical, except that the first is a state law cause of action, the second federal. Summary judgment is granted as to defendant officer McFarland.

Count Three alleges False imprisonment and false arrest under § 1983. Summary judgment is granted as to all defendants.

Count Four alleges malicious prosecution against the individual officer defendants. Summary judgment is granted as to malicious prosecution.

Count Five alleges reckless, negligent conduct. Summary judgment granted as to Count Five against all defendants.

Counts Two and Six, and Count Seven (Anna Mazurkiewicz' derivative loss of services claim) survive.