**Walter DUKES, Plaintiff,**

v.

**STATE OF NEW YORK, et al., Defendants.**

**No. 86 Civ. 4580(RJW).**

United States District Court, S.D. New York.

July 31, 1990.

Walter Dukes, East Orange, N.J., pro se.

Victor A. Kovner, Corp. Counsel for the City of New York (Richard Schulsohn, Jonathan S. Becker, of counsel), New York City, for defendants Thomas Dowd, Carlos Gomez and the City of New York.

## OPINION

ROBERT J. WARD, District Judge.

Plaintiff, Walter Dukes ("Dukes"), an attorney appearing *pro se*, brought this action under 42 U.S.C. §§ 1983 and 1985 seeking redress for alleged violations of his constitutional rights. Dukes contends, *inter alia*, that defendant police officers Thomas Dowd ("Dowd") and Carlos Gomez ("Gomez") arrested and imprisoned him without probable cause, that Dowd and Gomez utilized excessive force in effecting his arrest, that his arrest, prosecution and conviction were the product of a conspiracy among Dowd, Gomez and others to deprive him of his rights, and that Dowd gave perjured testimony at his criminal trial which resulted in his conviction. In addition, Dukes seeks to hold the City of New York (the "City") liable for the actions of the defendant police officers.

Dowd, Gomez and the City (collectively the "municipal defendants"), move for partial summary judgment pursuant to Rule 56(b) and (d), Fed.R.Civ.P., on the claims of unlawful arrest and imprisonment, malicious prosecution, conspiracy, and perjury at Duke's criminal trial. The claims alleging excessive use of force, on which disputed issues of fact exist, are not included in this motion. Dukes, in response, filed a cross-motion seeking, *inter alia*, partial summary judgment from the municipal defendants. For the reasons that follow, the municipal defendants' motion is granted and Dukes' cross-motion is denied.

## BACKGROUND

The groundwork for this action was laid in a landlord tenant dispute involving, Robin Renaud ("Renaud"), a friend of Dukes who lived in a rooming house located at West 158 Street in Manhattan, and Lavonne Scruggs ("Scruggs"), the owner of the rooming house. A controversy arose over whether Dukes had moved in with Renaud, who lived in a room on a floor reserved for women. A confrontation between Renaud and Scruggs ensued and resulted in Scruggs filing a criminal complaint, on or about October 18, 1984, charging Renaud with assault in the third degree and harassment. At that time, a temporary order of protection was issued barring Renaud from harassing Scruggs.

Dukes states that Renaud asked him to represent her in defending against the criminal charges filed by Scruggs. As a result of his involvement with Renaud,

Dukes alleges that Scruggs and her son, Joseph Scruggs, Jr., a New York City court officer, began harassing him. On or about October 31, 1984, Dukes filed a criminal complaint charging that Scruggs stole his credit cards and typewriter. A temporary order of protection based on these charges was also issued, barring harassment of plaintiff by Scruggs. Both of these cases were ultimately dismissed.

After this initial legal sparring, Scruggs filed a criminal complaint on January 24, 1985, charging Dukes with menacing, refusing her access to Renaud's room to make repairs, and harassment. She alleged that on January 23, 1985, she attempted to gain access to clean and repair the room in which Dukes was staying, but he refused her access and threatened her with a machete. Upon Scruggs' complaint, a temporary order of protection was issued which ordered Dukes to refrain from harassing, intimidating, threatening, or otherwise interfering with Scruggs.

On the morning of January 25, 1985, the order of protection was served on Dukes by Scruggs, accompanied by police officers Dowd and Gomez. Dukes was served in Renaud's room in the rooming house at West 158th Street. Later that morning, Dowd and Gomez returned to the rooming house in response to a radio call of a dispute. Scruggs informed them that Dukes had struck her in violation of the order of protection. Plaintiff was thereupon arrested and charged with criminal contempt and assault.

Upon a prosecutor's information, plaintiff was charged in connection with the incidents which occurred on January 23 and January 25, 1985. The information charged Dukes with the following four crimes: (1) menacing in violation of New York State Penal Law § 120.15, (2) harassment in violation of New York State Penal Law § 240.25, (3) assault in the third degree in violation of New York State Penal Law § 120.00 and (4) criminal contempt in the second degree in violation of New York State Penal Law § 215.50.

A jury trial on these charges took place on August 13 and 14, 1985, before Judge Alan Meyer of the Criminal Court of the City of New York. At the trial, Scruggs, Dowd, Renaud, Dukes and Michael Gene Person, a tenant at the rooming house, testified as to the events in question. In his testimony, Dukes denied each of the charges against him, specifically claiming that he was not in the rooming house on January 23, 1985 when Scruggs alleged he threatened her with a machete, that he was never served with the order of protection on January 25, 1985, and that he had no contact with Scruggs on January 25, 1985 prior to his arrest.

The jury found Dukes guilty of assault in the third degree and criminal contempt in the second degree, the charges stemming from his conduct on January 25, 1985, but acquitted him of menacing and harassment, the charges stemming from the January 23, 1985 incident. As a result of his conviction, Dukes was sentenced to three years probation.

Dukes appealed his conviction, filing appellate briefs both *pro se* and via counsel, arguing, *inter alia*, that he was arrested without probable cause and that his conviction was obtained as a result of perjured testimony from a number of witnesses. By order dated June 29, 1988, the Supreme Court Appellate Term unanimously affirmed the conviction.

Dukes commenced the instant action on or about June 11, 1986. In a Memorandum Decision dated February 17, 1987, the Court dismissed claims asserted against Robert M. Morgenthau, District Attorney of New York County, and Collis White, an Assistant District Attorney.[1] The Court

---

1. Dukes had asserted that Morgenthau and White "conspired among themselves and with the other defendants to deprive him of his constitutional rights by attempting to prevent him from appearing in the New York State Supreme Court as an out-of-state attorney, *pro haec vice,* by issuing an improper order of protection and subsequently filing a false criminal information and raising false charges against him for violation of that protection order, by concealing favorable evidence and suborning perjury at the plaintiff's hearing and trial, and by participating in a history and pattern of discriminatory ac-

found that the conspiracy allegations leveled at these defendants were impermissibly vague and conclusory and thus, failed to state a claim for relief. The remaining claims were found to be barred because the defendant prosecutors were protected by absolute immunity.

Dowd, Gomez and the City now move to dismiss most of the claims against them on the grounds that Dukes' criminal conviction bars him from relitigating the lawfulness of his arrest, prosecution, or imprisonment, and that the conspiracy allegations are insufficient to support a claim for relief. In addition, Dowd argues that he is absolutely immune from civil liability arising out of his testimony at Dukes' criminal trial.

## DISCUSSION

In determining whether an asserted defense is available to defeat liability in a section 1983 action, the Court is guided in large part by principles of common law. *See Cameron v. Fogarty*, 806 F.2d 380, 386 (2d Cir.1986), *cert. denied*, 481 U.S. 1016, 107 S.Ct. 1894, 95 L.Ed.2d 501 (1987).

■ In *Cameron*, the Second Circuit considered a challenge to a section 1983 action alleging that defendant police officers arrested and imprisoned the plaintiff without probable cause. The court concluded that collateral estoppel could not be applied to bar the action despite various rulings by the state criminal trial court that evidence was seized incident to a lawful arrest, and despite plaintiff's conviction of the criminal charges, because the issue of probable cause to arrest the plaintiff was not necessarily decided at the criminal trial. *Id.* at 385. Without deciding whether the full faith and credit clause, 28 U.S.C. § 1738, requires the recognition of state law preclusionary rules other than *res judicata* and *collateral estoppel*,[2] the Second Circuit concluded that the claims were

barred under longstanding principles of common law. *Id.* at 386.

### A. Common Law Defense—Existence of Probable Cause

While the claims of false arrest, false imprisonment and malicious prosecution are not identical, there is substantial overlap among them, as "[c]ivil liability for false imprisonment following arrest is governed by many of the same principles that govern a claim of malicious prosecution." *Id.* at 387.

■ A claim of false arrest or false imprisonment is premised on a lack of probable cause for the arrest. *Id.* at 386; *Unger v. Cohen*, 718 F.Supp. 185, 187 (S.D.N.Y.1989). Similarly, in an action for malicious prosecution, plaintiff must demonstrate the absence of probable cause to arrest and that the proceedings terminated in plaintiff's favor. *Cameron v. Fogarty*, *supra*, 806 F.2d at 386. "It is abundantly clear that a finding of probable cause will defeat state tort claims for false arrest, false imprisonment and malicious prosecution," *Zanghi v. Village of Old Brookville*, 752 F.2d 42, 45 (2d Cir.1985), and a conviction is viewed as establishing the existence of probable cause. *Cameron v. Fogarty*, *supra*, 806 F.2d at 387; Restatement (Second) of Torts ("Restatement") § 667(1) (1976) ("Conviction of the accused ... conclusively establishes the existence of probable cause, unless the conviction was obtained by fraud, perjury or other corrupt means").

Thus, the common law rule, "equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested." *Cameron v. Fogarty*, *supra*, 806 F.2d at 387. *See also Broughton v. State*, 37 N.Y.2d 451, 458, 373 N.Y.S.2d 87, 95,

tions." Memorandum Decision, filed February 18, 1987 at 1.

**2.** Under New York law, a judgment of conviction is conclusive proof of the underlying facts in a subsequent civil action and will preclude claims of unlawful arrest, illegal detention and

violation of the right to a fair trial. *Alexander v. City of Peekskill*, 80 A.D.2d 626, 436 N.Y.S.2d 327, 328 (2d Dept.1981). *See also Camarano v. City of New York*, 646 F.Supp. 246, 248–49 (S.D.N.Y.1986).

335 N.E.2d 310, 315, *cert. denied,* 423 U.S. 929, 96 S.Ct. 277, 46 L.Ed.2d 257 (1975).

The Second Circuit summarized the reasoning behind applying this common law rule in section 1983 actions as follows:

> we conclude that the proper accommodation between an individual's interest in preventing unwarranted intrusions into his liberty and society's interest in encouraging the apprehension of criminals requires that § 1983 doctrine be deemed, in the absence of any indication that Congress intended otherwise, to incorporate the common-law principle that where law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause.

*Cameron v. Fogarty, supra,* 806 F.2d at 388–89.

The Court can construe Dukes as having raised two basic objections to the preclusion of his claims under the common law rule. First, Dukes maintains that his conviction was not valid, and therefore, should not be presumptively equated with a showing of probable cause. Second, Dukes asserts that his acquittal of the menacing and harassment charges was a favorable termination sufficient to permit his claims to proceed, notwithstanding his conviction for assault and criminal contempt.

### 1. Perjury Allegations

■ Dukes questions the truthfulness of the testimony of certain witnesses at his criminal trial, including Dowd, and argues that his conviction was tainted by perjury. Plaintiff is correct that an invalid conviction would not support the defense asserted by defendants, as only a valid conviction will sustain the presumption that probable cause was established. *See Unger v. Cohen, supra,* 718 F.Supp. at 187 (guilty plea was not sufficient to establish probable cause on summary judgment motion, despite plaintiff's failure to upset that conviction, because plaintiff had raised material issue of fact regarding the voluntariness of the plea). *See also Haring v. Prosise,* 462 U.S. 306, 317–18, 103 S.Ct. 2368, 2375–76, 76 L.Ed.2d 595 (1983) (redetermination of

issues decided by state court may be warranted if there is reason to doubt the quality, extensiveness, or fairness of the procedures utilized in the state forum); *Smith v. Springer,* 859 F.2d 31, 34–35 (7th Cir.1988) (plaintiff may maintain a section 1983 action alleging that the defendant police officers fabricated evidence against him to secure his conviction); Restatement § 667(1). Therefore, plaintiff may avoid summary judgment by demonstrating that genuine issues of material fact exist as to the validity of the conviction such that defendant is not entitled to judgment as a matter of law. *See Unger v. Cohen, supra,* 718 F.Supp. at 187. Dukes, however, has wholly failed to make such a showing.

■ Dukes challenges the veracity of the witnesses who appeared at trial and testified against him. Dukes, however, has presented no new evidence to support his accusations that these witnesses testified falsely. Nor has Dukes attempted to vacate the state court judgment under New York State Criminal Procedure Law ("N.Y. S.C.P.L.") § 440.10 (McKinney 1983) or any other applicable post-judgment procedure. Instead, he simply seeks to support his allegation of perjury by pointing out that certain witnesses testified differently than he did (and thus, untruthfully), as to some of the facts surrounding the incidents in question. *Cf. White v. Frank,* 855 F.2d 956, 957 (2d Cir.1988) (plaintiff allowed to maintain § 1983 action alleging false arrest, false imprisonment and malicious prosecution when conviction was judicially vacated as a result of confessed perjury by defendant police officer).

During the criminal trial, Dukes, through counsel, was afforded a full opportunity to cross-examine the witnesses against him and expose any inconsistencies or falsehoods in their testimony. In addition to being allowed to attack the accuracy and credibility of the testimony offered against him, Dukes called witnesses and testified on his own behalf. Moreover, on his appeal Dukes raised the issue of perjury, arguing that his conviction was the result of false testimony. This argument was rejected by the state court in affirming his conviction.

Dukes cannot challenge the validity of his conviction in this proceeding, at least without presenting new evidence that would lead the Court to question whether plaintiff was afforded a full and fair trial. *See Brown v. De Fillipis,* 717 F.Supp. 172, 176–77 (S.D.N.Y.1989) (the plaintiff's allegations that perjury was committed at a suppression hearing were insufficient to prevent the application of *collateral estoppel* to a suppression hearing ruling that the plaintiff's Fourth Amendment rights were not violated); *See also Alexander v. City of Peekskill, supra,* 80 A.D.2d at 626, 436 N.Y.S.2d at 328 (plaintiff who alleged that his conviction was the result of perjury because a witness against him had pleaded guilty to perjury, but who sought no relief under N.Y.S.C.P.L. § 440.10 or other remedy to set aside his conviction, was precluded from maintaining a section 1983 or 1985(3) action while the conviction still remained in force).

To summarize, Dukes allegations of perjury boil down to his disagreement with the jury's decision to credit testimony other than his own, and thereby convict him. Despite Dukes' unhappiness with the jury verdict, it is the essential function of the jury to determine the facts of the action tried before it, including which testimony to believe or disbelieve. The fact that Dukes' testimony is at odds with the testimony of other witnesses does not supply a sufficient basis for an allegation of perjury, or raise a material issue of fact as to the validity of his conviction. Accordingly, Dukes allegations of perjury are insufficient to preclude the common law conviction defense to these claims.

### 2. The Acquittal on Certain Charges

█  Next, Dukes argues that his acquittal on the menacing and harassment charges allows him to proceed with his false arrest, false imprisonment and malicious prosecution claims against the municipal defendants despite his conviction for assault and criminal contempt. This argument is also unavailing.

█  In *Janetka v. Dabe,* 892 F.2d 187, 188 (2nd Cir.1989), the plaintiff asserted a claim for malicious prosecution of a resisting arrest charge in violation of his constitutional rights under §§ 1983 and 1988 (1982).[3] In that case, Janetka had been acquitted of resisting arrest after a trial which also resulted in his conviction of disorderly conduct. *Id.* The district court concluded that the conviction for disorderly conduct precluded a finding that there was a favorable termination of the criminal proceeding for the plaintiff with respect to the resisting arrest charge, because both offenses arose out of events that occurred on the same occasion. The Second Circuit reversed. The court found that the acquittal on the resisting arrest charge constituted a favorable termination sufficient to allow a malicious prosecution action to proceed because the disorderly conduct and resisting arrest charges were distinct, involved different factual allegations, and the plaintiff was acquitted of the more serious charge filed against him. *Janetka v. Dabe, supra,* 892 F.2d at 190.

None of the circumstances which led the Second Circuit to its conclusion in *Janetka* are present in the claims Dukes presses against the municipal defendants. Dukes was convicted of the more serious assault and contempt charges lodged against him as a result of his arrest by officers Dowd and Gomez. Moreover, the charges of which he was acquitted were those instituted by Scruggs' criminal complaint. Nowhere has plaintiff presented facts which tie the municipal defendants to the filing of the criminal complaint concerning the alleged acts of menacing and harassment on January 23, 1985. Instead, the events of January 25, 1985 in which Dowd and Gomez were involved, led to the arrest and conviction of Dukes on the additional charges of assault and criminal contempt. Accordingly, the acquittal on the other

---

**3.** An action for malicious prosecution is available against an individual who (1) instituted criminal proceedings against the plaintiff (2) with malice and (3) without probable cause, if (4) the criminal proceedings terminated in plaintiff's favor. *See White v. Frank,* 855 F.2d 956, 959 n. 2 (2d Cir.1988).

charges provides no basis to challenge the existence of probable cause, or to allow the maintenance of a claim for false arrest, false imprisonment, or malicious prosecution against the municipal defendants.

### B. *The Conspiracy Allegations and Cross–Motion*

■ To the extent, if any, that the conspiracy claims asserted by Dukes against the municipal defendants are not also barred by his criminal conviction, they must be dismissed because he has failed to allege, much less provide, sufficient facts to support these claims.

As this Court noted in its February 17, 1987 Memorandum Decision, the Second Circuit "has repeatedly held that complaints containing only 'conclusory,' 'vague,' or 'general allegations' of a conspiracy to deprive a person of constitutional rights will be dismissed." *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir.1977) (citing *Black v. United States*, 534 F.2d 524 (2d Cir.1976). *See also Zemsky v. City of New York*, 821 F.2d 148, 152 (2d Cir.), *cert. denied*, 484 U.S. 965, 108 S.Ct. 456, 98 L.Ed.2d 396 (1987).

Dukes has put forth vague and general allegations of a conspiracy to deny him his rights, all without supplying sufficient facts that connect Dowd or Gomez to the conspiracy. Indeed, the allegation that the municipal defendants acted to retaliate against Dukes for his filing of criminal charges against Scruggs because Joseph Scruggs, Jr. was a New York City court officer is completely unsubstantiated, and in direct conflict with the testimony of officer Dowd at plaintiff's trial regarding the events that led to plaintiff's arrest. There are simply no facts to support an inference that Dowd or Gomez participated in a conspiracy to deprive plaintiff of his rights on account of his race, or on account of the criminal charges he had filed against Scruggs.

In his cross-motion and opposition to the municipal defendants' motion, Dukes introduces a long litany of allegations that defendants were involved in a protracted conspiracy to deprive him of certain business opportunities. These allegations accuse defendants of being part of a Hydra-like conspiracy which commenced in or about 1969 and continues to this date, involves officials in various agencies of New York City and New York State, and is designed, in large part, to frustrate plaintiff's plan to construct a low income housing development in upper Manhattan called "Academic Plaza." These conclusory, disjointed and unsubstantiated allegations have no link with the activities complained of in this lawsuit, as no facts have been alleged which even remotely connect Dowd or Gomez with a conspiracy directed at blocking the construction of Academic Plaza, or the hinderance of plaintiff's business opportunities.[4] Accordingly, the conspiracy claims against the municipal defendants must be dismissed.

Furthermore, plaintiff's cross-motion presents no basis for awarding partial summary judgment, or any other relief, against the municipal defendants. Therefore, the cross-motion is denied.

### C. *The Perjury Claim Against Dowd*

■ The perjury claims against Dowd must be dismissed because he is absolutely immune from a section 1983 claim that he testified falsely at Duke's criminal trial. *See Briscoe v. LaHue*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (granting police officers absolute immunity from liability for testimony at trial); *Daloia v. Rose*, 849 F.2d 74, 76 (2d Cir.) (extending absolute immunity to testimony at adversarial pretrial proceedings), *cert. denied*, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231 (1988). The immunity of parties and witnesses from liability for dam-

---

**4.** Dukes apparently attempted, without success, to assert this massive conspiracy claim in another action filed in this district. *Dukes v. City of New York, et al.*, No. 86 Civ. 2756 (RO). By Memorandum Endorsement, dated April 25, 1988, Judge Richard Owen dismissed with preju-

dice, as violative of Rule 8(a), Fed.R.Civ.P., a pleading by Dukes asserting a conspiracy claim against a long list of named and unnamed employees of New York City and New York State for, among other things, the failure to develop a low income housing project in Manhattan.

ages resulting from their testimony in judicial proceedings was well established in English common law, and nothing in section 1983 abrogated this immunity, or limited it in connection with the testimony of police officers. *Briscoe v. LaHue, supra,* 460 U.S. at 345–46, 103 S.Ct. at 1120–21. Public policy dictates that witnesses enjoy this immunity in order to promote the truth-seeking function of the adversarial process by removing undue self-censorship borne out of apprehension over subsequent liability for damages. *Id.* at 333–34, 103 S.Ct. at 1114–15. While this immunity does not extend to the constitutional tort of initiating a baseless prosecution, even when that prosecution is begun through testimony at a judicial proceeding, *see White v. Frank, supra,* 855 F.2d at 961, the allegations directed at Dowd concern his testimony during Dukes' trial. Trial testimony is precisely the type of testimony afforded the full protection of immunity from section 1983 action. Accordingly, this claim must be dismissed.

### CONCLUSION

The motion of the municipal defendants to dismiss the claims asserting false arrest, false imprisonment, malicious prosecution, conspiracy, and perjury by defendant Dowd is granted. Plaintiff's cross-motion is denied. The parties are directed to confer and submit a status letter to the Court concerning the scheduling of any further discovery and the filing of a joint pretrial order in connection with the remaining claims in this action, as well as the related action, *Dukes v. Scruggs,* No. 87 Civ. 3710 (RJW), by September 13, 1990.

It is so ordered.